UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VICTOR ADUAYI and ADENEYE O. ADESANYA-ADUAYI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>PHH MORTGAGE SERVICES, and NEWREZ LLC,<br><br>Defendants. | * * * * * * * * * * * * * * | Civil Action No. 23-cv-10857-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiffs Victor Aduayi and Adeneye O. Adesanya-Aduayi (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class"), allege that Defendants PHH Mortgage Services ("PHH") and Newrez LLC ("Newrez," and collectively with PHH, "Defendants") unlawfully refused to respond to their requests for information regarding their mortgage account. See [ECF No. 1 ("Complaint" or "Compl.") ¶¶ 23–32, 51–60]. Now pending before the Court is Defendants' motion to dismiss. [ECF No. 13]. For the reasons set forth below, the motion is GRANTED and the Complaint is dismissed without prejudice.

## I. BACKGROUND

The following facts are drawn from the Complaint, the well-pleaded allegations of which are taken as true for purposes of evaluating the motion to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

In addition, although "[o]rdinarily, . . . any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden[] unless the proceeding is properly converted into one for summary judgement," courts "have made narrow exceptions for documents the authenticity of which are not disputed by the parties; . . . for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). Here, the following documents attached to Defendants' memorandum in support of their motion to dismiss, [ECF No. 14 (the "Motion" or "Mot.")], and/or Plaintiffs' opposition to Defendants' motion to dismiss, [ECF No. 17 (the "Opp'n")], are not disputed as inauthentic, are central to the claims, and/or are sufficiently referred to in the Complaint, and thus the Court will consider them here: Plaintiffs' letter to PHH dated July 29, 2022, [ECF No. 18; ECF No. 14-2 (the "July 29th letter")]; PHH's "partial response" to Plaintiffs dated August 16, 2022, [ECF No. 14-3 (the "August 16th response")]; Plaintiffs' letter to PHH dated November 29, 2022, [ECF No. 17-1; ECF No. 14-7 (the "November 29th letter")]; and PHH's final response to Plaintiffs dated January 5, 2023, [ECF No. 17-2; ECF No. 14-8 (the "January 5th response")].

**A. Factual Background**

On July 29, 2022, Plaintiffs (through counsel), mailed a letter to Defendant PHH, which they allege was a "Qualified Written Request to Notice of Error and Request," [Compl. ¶ 23], "disputing the validity of the[ir] current debt . . . owe[d], including without limitation, the principal balance, calculated monthly payment, assessed costs, calculated escrow payment, and . . . fees . . . [,]" [ECF No. 18 at 2; ECF No. 14-2 at 2]; see also [Compl. ¶ 23]. In that letter, Plaintiffs wrote "[p]lease treat this letter as a 'notice of error' and 'request for information' under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), and Regulation X, 12 C.F.R. §§ 1024.35, 1024.36," [ECF No. 18 at 2; ECF No. 14-2 at 2], and then listed twenty-six specific

requests for information, [ECF No. 18 at 2–4; ECF No. 14-2 at 2–4]. Among other things, the letter asked Defendants to send "[a] copy of any and all recordings . . . [and a] copy of any and all transcripts of conversations with [Plaintiffs] or any other person concerning [Plaintiffs'] account." [Compl. ¶ 23]; see also [ECF No. 18 at 4; ECF No. 14-2 at 4].

Plaintiffs state that "[o]n or about August 26, 2022," they received a "partial response" to the July 29 letter. [Compl. ¶ 24].[1] Although the response contained seventy-seven pages of information, [ECF No. 14-3], it did not include the requested recordings, transcripts, and notes of Plaintiffs' phone calls with PHH, [Compl. ¶ 25]. Defendants stated that such records and information were "for internal purposes only," [ECF No. 14-3 at 4; Mot. at 7], and further provided that "[a]ny requested information . . . not provided in this response is either: 1) not in our possession 2) production of such information would create an undue burden on PHH and/or 3) it is privileged or confidential information that cannot be released," [ECF No. 14-3 at 4; Mot. at 7]. Defendants also noted that they had researched the claimed error and "determined that no error occurred." [ECF No. 14-3 at 4].

On November 29, 2022, Plaintiffs sent another letter to PHH, also alleged to be a "Qualified Written Request," asking again for "recordings" and "transcripts of conversations . . . concerning [the Plaintiffs'] account." [Compl. ¶ 26]. Defendants responded on January 5, 2023, refusing again to provide the recordings and transcripts and stating that "[a]ll communications

---

[1] Although the Complaint alleges that Plaintiffs received a "partial response" to the July 29, 2022 letter from PHH "[o]n or about August 26, 2022," [Compl. ¶ 24], in their opposition Plaintiffs state that "PHH responded to the [July 29, 2022] letter on August 16, 2022," and cite to Paragraph 24 of the Complaint. [Opp'n at 3]. ECF No. 14-3, in turn, is an August 16, 2022 letter to Plaintiffs titled "Response Letter for your Recent Request." [ECF No. 14-3]. The Court assumes that the reference to August 26 in the Complaint was a typographical error, and because Plaintiffs do not dispute the authenticity of ECF No. 14-3, the Court considers this exhibit for purposes of this motion to dismiss. See Watterson, 987 F.2d at 3.

with the vendors, collection notes, recorded calls and notes, [and] transcripts of phone call[s] are for internal purposes only." [Id. ¶ 27]; see also [ECF No. 17-2 at 2; ECF No. 14-8 at 2].

Plaintiffs allege on information and belief that "Defendants have refused to produce recordings for possibly hundreds if not thousands of consumers that have requested them," [Compl. ¶ 28], and that they "have the ability to easily produce the requested recordings through reasonable business efforts," [id. ¶ 29]. Further, they aver "that Defendants have no proper basis to conclude that telephone recordings and transcripts are 'for internal purposes only.'" [Id. ¶ 30].

Moreover, Plaintiffs allege that Defendants' refusals are "a pattern and practice" of violating the Real Estate Settlement Procedures Act ("RESPA"), [Compl. ¶ 31], because (1) their "blanket refusal . . . appears to be a uniform template response sent to many customers," [id.], and (2) "at least two requests were made . . . for the recordings in question and Defendants failed to produce the recordings in response to each request," [id. ¶ 32].

**B. Procedural History**

Plaintiffs filed the Complaint on April 21, 2023, alleging that Defendants PHH and Newrez engaged in a "pattern or practice" of violating RESPA by failing to respond to Plaintiffs', and at least 40 other similarly situated borrowers', requests for information. See generally [Compl.]. They seek to represent a class "of all others similarly situated," including:

> [a]ll persons within the United States who have or have had a mortgage loan with Defendants and who within three years from the filing of this Complaint have requested copies of audio recordings or transcripts of phone calls between themselves and Defendants pursuant to 12 U.S.C. § 2605(e)(1)(A) and 12. C.F.R. § 1024.36 and who have subsequently been denied access to those audio recordings by Defendants.

[Id. ¶ 39]. While "Plaintiffs do not know the number of members in the Class," they assert that "the Class members number in the several thousands, if not more." [Id. ¶ 41].

Defendants moved to dismiss on June 21, 2023, [ECF No. 13], and Plaintiffs opposed on July 5, 2023, [Opp'n]; see also [ECF No. 18 (attachments to Opp'n)].

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). This pleading standard requires "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

## III. DISCUSSION

### A. RESPA

Under RESPA, borrowers (or their agents) may make a "qualified written request ['QWR'] . . . for information relating to the servicing of [their] loans" to "any servicer of a federally related mortgage loan." 12 U.S.C. § 2605(e)(1)(A). The information sought through a QWR must relate to the servicing of a loan, id., where "servicing" of a loan includes "receiving any scheduled periodic payments from a borrower" or "the making of . . . payments of principal and interest and such other payments with respect to the amounts received from the borrower . . . ," id. § 2605(i)(3). The requirement that a request seek information relating to servicing "ensures that the statutory duty to respond does not arise with respect to *all* inquiries or complaints from borrowers to servicers." O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 36 (D. Mass. 2014) (quoting Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 666 (9th Cir. 2012), cert. denied, 133 S. Ct. 2800 (2013)).

In order to qualify as a QWR, a borrower's "written correspondence" must

> (i) include[], or otherwise enable[] the servicer to identify, the name and account of the borrower; and (ii) include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide[] sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. §§ 2605(e)(1)(B)(i)–(ii). A QWR that "includes a statement of the reasons for the belief of the borrower . . . that the account is in error," id. § 2605(e)(1)(B)(ii), is considered a "Notice of Error" or "NOE," 12 C.F.R. § 1024.35. Alternatively, a QWR that seeks specific information by "provid[ing] sufficient detail to the servicer regarding [that] information sought," 12 U.S.C. § 2605(e)(1)(B)(ii), is considered a "Request for Information" or "ROI," 12 C.F.R. § 1024.36(a).

To state a claim that a servicer violated RESPA under 12 U.S.C. § 2605, "Plaintiffs must show (1) that the servicer failed to comply with the statute's [QWR] rules; and (2) that the plaintiff incurred actual damages as a consequence of the servicer's failure."[2] Gaydos v. Bank of Am., N.A., No. 17-cv-10246, 2019 WL 404031 at *3 (D. Mass. Jan. 30, 2019) (quoting Brown v. CitiMortgage, Inc., No. 16-cv-11484, 2017 WL 1363305, at *4 (D. Mass. Apr. 11, 2017)), aff'd sub nom. In re Gaydos, No. 19-cv-1186, 2022 WL 4594017 (1st Cir. Mar. 22, 2022).

Regarding the QWR rules, RESPA defines a servicer as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). A servicer that receives a QWR must acknowledge receipt of the QWR within five days and respond to the QWR "with a written explanation or clarification," within thirty days (for both deadlines, "excluding legal public holidays, Saturdays, and Sundays"). Id. § 2605(e).

---

[2] As explained below, courts are split as to whether "actual damages" requires a "specific pecuniary loss," or whether a claim can survive if a plaintiff only shows entitlement to statutory damages. See infra.

NOEs and ROIs trigger different obligations with respect to a servicer's response. In response to an NOE, a servicer must either:

> (A) [c]orrect[] the error or errors identified by the borrower and provid[e] the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or (B) [c]onduct[] a reasonable investigation and provid[e] the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. §§ 1024.35(e)(1)(i)(A)–(B). In response to an RFI, on the other hand, a servicer must either:

> (i) [p]rovid[e] the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or (ii) [c]onduct[] a reasonable search for the requested information and provid[e] the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provide[] the basis for the servicer's determination, and provide[] contact information, including a telephone number, for further assistance.

Id. §§ 1024.36(d)(1)(i)–(ii).

Regarding damages, 12 U.S.C. § 2605(f) states the following:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: (1) Individuals[.] In the case of any action by an individual, an amount equal to the sum of--(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

Id. Courts are split as to whether a plaintiff must show actual damages—namely "a specific pecuniary loss," Gaydos, 2019 WL 404031, at *3 (citing Foregger v. Residential Credit Sols., No. 12-cv-11914, 2013 WL 6388665 at *4 (D. Mass. Dec. 5, 2013)), or whether a plaintiff can alternatively claim only "statutory damages, which requires a 'showing of a pattern or practice of noncompliance by the servicer,'" id. (quoting Afridi v. Residential Credit Sols., Inc., 189 F.

Supp. 3d 193, 200 (D. Mass. 2016)).[3] Although the First Circuit has not articulated a position on whether a plaintiff must show actual or only statutory damages, it has affirmed the use of the disjunctive standard (e.g. that a plaintiff can show either actual or statutory damages) set out in Gaydos, 2019 WL 404031, at *3, see In re Gaydos, 2022 WL 4594017, at *1, and as such, the Court applies that standard here.

If alleging "a specific pecuniary loss," Gaydos, 2019 WL 404031, at *3, then Plaintiffs must sufficiently "allege *how* the stated damages were actually caused by the alleged RESPA violations." Brown, 2017 WL 1363305, at *4 (dismissing RESPA claim because "[p]laintiffs [did] not state[] how any of [their damages] were distinctive damages specifically caused by Defendant's failure to properly respond to their letters"). If alleging statutory damages related to

[3] The Eighth, Sixth, Eleventh, and Seventh Circuits have either suggested or held that plaintiffs must show actual harm and cannot alternatively plead statutory damages. See Wirtz v. Specialized Loan Servicing, LLC, 886 F.3d 713, 718, 720 (8th Cir. 2018) ("Proof of actual damages is an essential element of a claim under RESPA. . . . For RESPA's statutory damages to be 'additional,' there must be other damages to which they are 'added.' Because [plaintiff] suffered no actual damages, the district court's award of statutory damages must be reversed."); Lanton v. Ocwen Loan Servicing, LLC, 793 F. App'x 398, 401 (6th Cir. 2019) ("The statute . . . requires a plaintiff to prove 'actual damages' relating to any alleged violation of RESPA."); Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1247 n.4 (11th Cir. 2016) ("We observe without ruling on the question, that the use of 'additional' [in the statute] seems to indicate that a plaintiff cannot recover pattern-or-practice damages in the absence of actual damages."); Diedrich v. Ocwen Loan Servicing, LLC, 839 F.3d 583, 589 (7th Cir. 2016) ("[RESPA] does not grant statutory damages for bare procedural violations; it requires an actual injury. . . . The injury must be 'actual,' both for standing purposes and for purposes of the statute."). While some courts within the First Circuit have followed this approach, see, e.g., Fitch v. Fed. Hous. Fin. Agency, No. 18-cv-00214, 2021 WL 4901909, at *5 (D.R.I. Oct. 21, 2021) ("As long as there are actual damages caused by a failure to comply with RESPA, the injured borrower may also seek to recover statutory damages if the borrower establishes a pattern or practice of noncompliance with the requirements of this section."), R & R adopted, 2022 WL 159287 (D.R.I. Jan. 18, 2022), others have held that plaintiffs can show either actual damages or statutory damages, see, e.g., Dyer v. Capital One, N.A., 496 F. Supp. 3d 554, 562 (D. Mass. 2020) ("As an alternative to the [actual damages] requirement, a plaintiff may plead statutory damages, which requires a 'showing of a pattern or practice of noncompliance by the servicer.'" (quoting Afridi, 189 F. Supp. 3d at 200)).

a pattern or practice of noncompliance, repeated failures to respond to a single Plaintiff may qualify as a pattern or practice, see, e.g., Ploog v. HomeSide Lending, Inc., 209 F. Supp. 2d 863, 868–69 (N.D. Ill. 2002) (finding that five alleged failures to respond constituted a sufficiently pleaded pattern or practice), but more than two failures to respond are needed to establish a pattern or practice, see Brown, 2017 WL 1363305, at *4 n.2 (determining that two alleged failures to respond were not enough to establish a pattern or practice). Moreover, generically alleging "upon information and belief" that a servicer has failed to respond to additional individuals' QWRs is insufficient to survive a motion to dismiss a RESPA claim. Brown, 2017 WL 1363305 at *4 (holding that "conclusory statement[s]" based "[u]pon information and belie[f]" that defendants had "engaged in a much broader pattern and practice of failing to comply with RESPA" were insufficient to support a pattern or practice claim); see also Perron v. JP Morgan Chase Bank, N.A., No. 12-cv-01853, 2015 WL 2166671, at *7 (S.D. Ind. May 8, 2015) (holding that plaintiffs had failed to establish a pattern or practice where plaintiff's allegations "relie[d] only on her 'information and belief'"), aff'd, 845 F.3d 852 (7th Cir. 2017); Bakko v. Quicken Loans, Inc., 358 F. Supp. 3d 800, 805–06 (D. Minn. 2018) (stating that pattern or practice "allegations based on 'information and belief' are insufficient to state a claim").

**B. Regulation X**

In addition to the above, as authorized by Congress, the Consumer Financial Protection Bureau ("CFPB") has issued rules implementing RESPA through Regulation X. See 12 U.S.C. § 2617(a). Regulation X provides that a servicer is not obligated to substantively respond to a QWR when it "reasonably determines that any [one of several exceptions] appl[ies.]" See 12 C.F.R. §§ 1024.35(g)(1), 1024.36(f)(1).

As applicable here, the regulation provides exceptions for NOEs that are either (1) duplicative (where the "asserted error is substantially the same as an error previously asserted by

the borrower for which the servicer has previously [responded]"), or (2) overbroad (where "the servicer cannot reasonably determine from the notice of error the specific error that the borrower asserts has occurred on a borrower's account"). 12 C.F.R. §§ 1024.35(g)(1)(i)–(ii). The regulation also provides exceptions for RFIs that (1) request duplicative information (where the "information requested is substantially the same as information previously requested by the borrower for which the servicer has previously [responded]"), (2) request "[c]onfidential, proprietary or privileged information," (3) request irrelevant information (where the "information requested is not directly related to the borrower's mortgage loan account"), or (4) are "[o]verbroad or unduly burdensome." Id. §§ 1024.36(f)(1)(i)–(iv).

If a servicer reasonably determines that an exception applies to either a NOE or RFI, then "the servicer shall notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after making such determination," and "set forth the basis . . . upon which the servicer has made such determination." 12 C.F.R. §§ 1024.35(g)(2), 1024.36(f)(2).

**C. Analysis**

1. Whether Plaintiffs' Letters were Qualified Written Requests

First, Defendants argue they were not obligated to respond with the information requested by Plaintiffs because their requests for transcripts and recordings do not satisfy the requirements of a valid QWR for two reasons: (1) they were not about or in reference to loan servicing, [Mot. at 12–13]; and (2) they were contained in letters that were "duplicative" and "repetitive, discovery-style documents," [id. at 13–14, 18].

In response, Plaintiffs argue that "[a]udio recordings 'concerning' a mortgage loan account plausibly (and surely do) relate to the 'servicing of [the] loan.'" [Opp'n at 8]. Plaintiffs also aver that their letters were not "repetitive, discovery-style documents," but rather "thorough,

specific, and detailed so that PHH would know exactly what information Plaintiffs were seeking." [Id. at 14]. Moreover, Plaintiffs argue that their letters were not "duplicative" as "each letter was different." [Id. at 16].

Here, among other things, Plaintiffs allege that their letters "dispute . . . the amount [Defendants] allege[d] [Plaintiffs] owe[d]." [ECF No. 18 at 2]. This is sufficiently related to "making [loan] payments of principal and interest" to qualify the letters as relating to the servicing of Plaintiffs' loan.[4] See 12 U.S.C. §§ 2605(e)(1)(B)(ii); id. § 2605(i)(3) (as noted above, "'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower'"); see also Deane v. Nationstar Mortg., LLC, No. 13-cv-02604, 2014 U.S. Dist. LEXIS 28114, at *5–6 (M.D. Fla. Mar. 5, 2014) (holding that where a "letter disputes amounts owed, how payments have been applied and requests information regarding the same, it can plausibly be construed as a QWR"). The parties do not dispute that the letters also clearly contained information sufficient for Defendants "to identify[] the name and account of the borrower." See [Mot. at 6 ("PHH responded with a detailed four-page explanation in response to Plaintiffs' requests . . . .")]; 12 U.S.C. §§ 2605(e)(1)(B)(i). As a result, the letters qualify as QWRs, and specifically as NOEs. 12 C.F.R. § 1024.35(a) ("A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error . . . .").

[4] The fact that some requests did not qualify as QWRs does not take the entire letter outside of the scope of RESPA. See Dickey v. Chase Home Fin., LLC, No. 11-cv-11944, 2016 WL 10805742, at *2 (D. Mass. July 6, 2016) (holding that plaintiffs' requests were valid QWRs even though "some of the requests [were] undoubtedly over-broad and relate[d] to topics other than loan servicing (e.g. loan origination), [because] at least some [were] for information relating to the servicing of the loan").

Plaintiffs allege that Defendants failed to adequately respond to their requests for phone call transcripts and recordings. [Compl. ¶¶ 24–28]. Courts have held that transcripts and recordings of phone calls between a loan servicer and a borrower relate to loan servicing, and thus requests for the same can be RFIs. See Barbano v. JP Morgan Chase Bank, N.A., No. 19-cv-01218, 2019 WL 8883344, at *4 (C.D. Cal. Dec. 23, 2019) ("Plaintiffs plausibly allege a RESPA violation with regard to the asserted failure to provide any audio recordings [and transcripts]."); St. Claire v. Ditech Fin., LLC, No. 17-cv-03370, 2018 WL 4850127, at *14 (N.D. Ga. Sept. 21, 2018) (finding that requests for recordings and transcripts were valid QWRs, and also using "organized recordings or transcripts of borrower telephone calls" as an example of information that servicers must provide upon request when the servicer has "access in the ordinary course of business to [the] files" (citing 12 C.F.R. § Pt. 1024, Supp. I, ¶ 36(d)(1)(ii))); see also Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 666 (9th Cir. 2012) ("Any reasonably stated written request for account information can be a qualified written request." (quoting Catalan v. GMAC Mortg. Corp., 629 F.3d 676, 687 (7th Cir. 2011))). Accordingly, the Court finds that Plaintiffs' requests for transcripts and recordings of phone calls were QWRs.

2. Whether Defendants Meet a Regulation X Exception

Second, Defendants argue that they were not required to substantively respond to the request for transcripts and recordings pursuant to Regulation X because (1) the recordings and transcripts "were confidential," and (2) producing them "would create an undue burden on PHH." [Mot. at 14–16]. They contend that they "notified Plaintiffs of this determination," [id. at 15], and that Plaintiffs fail to sufficiently "address[] the confidentiality and undue burden bas[e]s" for Defendants' refusal to provide the transcripts and recordings as they have not shown that the recordings and transcripts were in Defendants' possession or could be retrieved by Defendants "in the ordinary course of business through reasonable efforts," [id. at 16–17].

Moreover, Defendants state that they satisfied their legal obligation under 12 U.S.C. § 2605 by responding to Plaintiffs and explaining why they were exempt from responding. [Id. at 17–19].

Plaintiffs respond that as a matter of law, where they have claimed that the "servicer failed to adequately determine" that an exception applies, the question of whether the servicer's determination was reasonable is not appropriately decided at the motion to dismiss stage. [Opp'n at 12]. Plaintiffs also argue that their requests were not overbroad or unduly burdensome, that Defendants have failed to show that they were, and that the recordings and transcripts requested were in no way confidential. [Id. at 11–14]. Furthermore, Plaintiffs claim that Defendants' initial responses to their letters mentioned nothing about undue burden and instead stated only that the information requested was "for internal use only" and "confidential." [Id. at 13]. Finally, Plaintiffs argue that should the Court find that some of the requests were overbroad or unduly burdensome, the remaining requests would still be qualified written requests for information. [Id. at 14].

The Court agrees with Plaintiff that it would be improper to decide at this early stage whether Defendants "reasonably determined" that one or more Regulation X exceptions applied to Plaintiffs' QWRs. Specifically, for the requests for transcripts and recordings at issue, [Compl. ¶¶ 23–28], "Plaintiff[s] plead[] that Defendant[s] did not reasonably determine that the [requested recordings and transcripts] were in the excluded categories . . . and that, in fact, [the recordings and transcripts] were available and were within the categories . . . that a servicer should provide." Wilson v. Bank of Am., N.A., 48 F. Supp. 3d 787, 806–07 (E.D. Pa. 2014) (internal citations omitted). "[D]rawing all inferences in favor of [Plaintiff]," Rivera-Rosario v. LSREF2 Island Holdings, Ltd., 79 F.4th 1, 4 (1st Cir. 2023) (citing Triangle Cayman Asset Co. v. LG and AC, Corp., 52 F.4th 24, 32 (1st Cir. 2022)), and "[t]aking [the above] allegations as

true, the Court . . . cannot dismiss this claim [on these grounds]," Wilson, 48 F. Supp. 3d at 807 (internal citations omitted).

3. Whether Defendants Reasonably Responded

Third, Defendants insist that they reasonably responded to the Plaintiffs' letters by providing them with one hundred and eighty-three pages of information, thereby "compl[ying] with both the letter and spirit of RESPA." [Mot. at 18–19]. In response, Plaintiffs argue that they received only a "form response," indicating that Defendants failed to conduct "a proper investigation or determination" when concluding that Regulation X exceptions applied. [Opp'n at 12]. Further, Plaintiffs contend that they never received the recordings and transcripts that they requested in their letters. [Id. at 2–3, 8].

Although Defendants' argument that they reasonably responded to Plaintiffs' letters is well taken, where a borrower has made multiple demands for information and some qualify as valid QWRs and some do not, a servicer is still obligated to respond to those demands that are valid QWRs. See Dickey, 2016 WL 10805742, at *2. Plaintiffs assert that Defendants failed to respond specifically to their requests for phone transcripts and recordings, [Compl. ¶¶ 24–28], and because (1) Plaintiffs' requests for transcripts and recordings of phone calls qualify as QWRs, see supra, and (2) the Court must take as true Plaintiffs' sufficiently pleaded allegation that Defendants failed to provide the recordings and transcripts, Rivera-Rosario, 79 F.4th at 4, Defendants' argument that they "reasonably responded" to Plaintiffs' requests does not carry the day at this stage.[5] [Mot. at 12].

[5] Plaintiffs sufficiently allege that Defendants failed to provide the requested materials in their initial response to Plaintiffs' first request. [Compl. ¶¶ 24–28]. As a result, Defendants' argument that they were not obligated to respond to "duplicative requests for information" is inapposite here even if Plaintiffs' subsequent requests were duplicative. [Mot. at 18]. Furthermore, contrary to Defendants' assertion that Plaintiffs failed to narrow their successive

4. Damages & Article III Standing

Lastly, Defendants argue that Plaintiffs have failed to allege (1) any pecuniary loss caused by the alleged failure to respond, [Mot. at 20–21]; or (2) a pattern or practice because they allege only one or two failures to respond to a QWR, and pattern or practice allegations based solely on "information and belief" are insufficient, [id. at 21–23]. Defendants further aver that Plaintiffs' failure to show any damages means that they also lack Article III standing. [Id. at 20].

Plaintiffs respond that (1) their pattern or practice claim alone is sufficient, and (2) they need not describe damages with specificity, and in any event, statutory damages from the pattern or practice theory are actual damages because "the First Circuit has held that 'statutory damages should be calculated [solely[6]] as an estimate of actual damages.'" [Opp'n at 15 (quoting Joe Hand Promotions, Inc. v. Lenihan, No. 11-cv-10504, 2012 WL 3637833, at *2 (D. Mass. Aug 21, 2012) (citing Charter Commc'ns Ent. I, DST v. Burdulis, 460 F.3d 168, 181 (1st Cir. 2006)))].[7] Plaintiffs further argue that the issue of damages should not be determined on a motion to dismiss and request that should "the Court . . . not believe Plaintiffs sufficiently pled damages, [they] . . . [be granted] leave to amend the complaint to do so." [Id.]. Finally, Plaintiffs aver that Defendants' "standard cut and paste responses" are enough to satisfy the pattern or practice damage requirements at this stage, as "information [regarding the Defendants'

---

requests, [id.], Plaintiffs' November 29 letter is plainly narrowed to (1) "cop[ies] of any and all recordings," and (2) "cop[ies] of any and all transcripts," [ECF No. 17-1 at 2].

[6] The word "solely" is missing in Plaintiff's quotation of the case.

[7] Plaintiffs apparently concede that they have not alleged actual damages by stating that they are "request[ing] relief from the Court in the form of statutory damages under RESPA." [Opp'n at 15].

pattern or practice] will come out in the discovery phase and to dismiss the case now based on a lack of pattern and practice would be premature." [Id. at 16].

Even if the statute allows Plaintiffs to plead either actual or statutory damages, the Supreme Court has held that allegations of "[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III [standing].'" TransUnion LLC v. Ramirez, 594 U.S. 413, 441 (2021) (quoting Trichell v. Midland Credit Mgmt., Inc., 964 F. 3d 990, 1004 (11th Cir. 2020)). Moreover, as relevant here, the Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.' As the Court emphasized in Spokeo, 'Article III standing requires a concrete injury even in the context of a statutory violation.'" Id. at 426 (quoting Spokeo Inc. v. Robins, 578 U.S. 330, 341 (2016)).

Here, the named Plaintiffs' only alleged injury is that they were not provided with the information and materials they requested from Defendants, specifically the recordings and transcripts of their phone calls with Defendants. [Compl. ¶¶ 24–28]. Because Plaintiffs fail to allege anything beyond an informational injury, they lack Article III standing and the case must be dismissed. See Fitch, 2021 WL 4901909, at *8 (finding plaintiff lacked Article III standing where plaintiff "failed to plead any plausible facts to establish that he was actually injured by [the defendant]'s allegedly noncompliant response" (citing Sanchez v. Johnson, Blumberg & Assoc., LLC, No. 16-cv-07056, 2018 WL 3861562, at *5 (N.D. Ill. Aug. 14, 2018) ("conclusory statements devoid of any factual allegations indicating how the plaintiff was damaged by the alleged unlawful conduct are insufficient" for standing to bring RESPA claim)).[8]

---

[8] Although the lack of standing alone is sufficient to warrant dismissal, it also appears to the Court that Plaintiffs have failed to allege a pattern or practice sufficient to support a claim for statutory damages. See Gaydos, 2019 WL 404031 at *4. Specifically, the Complaint alleges

## IV. CONCLUSION

Accordingly, Defendants' motion to dismiss, [ECF No. 13], is GRANTED because Plaintiffs lack Article III standing, and the case is dismissed without prejudice.

**SO ORDERED.**

March 8, 2024

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE

---

that Plaintiffs received a "uniform template" and were denied the recordings twice, [Compl. ¶¶ 31–32], and that on information and belief, "40 other similarly-situated borrowers who have requested audio recordings or transcripts of telephone calls between themselves and Defendants [were] likewise denied access to that information by Defendants," [id. ¶ 60]. But a "pattern or practice" under RESPA requires more than two failures to respond, see Brown, 2017 WL 1363305, at *4 n.2, and generically alleging "upon information and belief" that Defendants denied other people audio recordings or transcripts is insufficient to survive a motion to dismiss a RESPA claim, see id. at *4. That other individuals may have requested audio recordings and transcripts and were denied them does not provide the Court with enough information to know that, for example, they received the same "uniform template," or more broadly, that those individuals' requests required a response under RESPA and Regulation X. More broadly than that, and relatedly, though the Court need not decide the issue now, the individualized nature of the analysis under RESPA has the Court straining to see how Plaintiffs could successfully establish a class.